UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.

|  |  |
|---|---|
| DEXTER ANDREWS, RAYMOND DUNN, NUNO GOMES, TITUS ROYAL, MATTHEW SOLER, and NICHOLAS YOUNG, <br> Plaintiffs <br><br> v. <br><br> AMAZON.COM, INC., <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) |

## **CLASS ACTION COMPLAINT AND JURY DEMAND**

## INTRODUCTION

1. This lawsuit is brought by six Black and Latino delivery drivers, on behalf of themselves and others similarly-situated, who delivered for Defendant Amazon.com, Inc. ("Amazon") and were summarily terminated as a result of Amazon's racially discriminatory background check policy and practice.

2. Plaintiffs call on Amazon to adopt a fair and nondiscriminatory background screening policy.

3. Plaintiffs were qualified for the work they were performing and demonstrated their ability to safely and effectively do the work. Nonetheless, Amazon directed the termination of Plaintiffs and numerous other similarly-situated delivery drivers in Massachusetts and across the United States based on overly broad and

unjustifiably rigid background check policy without regard to these workers' successful record of performance and without any individualized assessment of their qualifications or their ability to perform the job.

4. Amazon's policy and practice of excluding workers based on background history resulted in discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), where that policy and practice relied on background history that was not sufficiently related to job duties and that occurred too far in the past, and where that policy and practice failed to provide an opportunity for individualized assessments to determine suitability for employment.

5. It is well documented that communities of color, including Black and Latino communities, are subjected to over-policing and traffic enforcement, and are arrested and convicted, at rates significantly higher than the White population. As a result, Amazon's policy and practice of terminating delivery drivers who are successfully performing their jobs, based solely on past involvement in the criminal justice system and driving history ("background history"), has a disparate impact on Black and Latino workers.

6. Amazon's policy and practice is not justified by any business necessity. Indeed, Plaintiffs and others in the putative class were terminated even though they had been successfully performing their jobs. Even if Amazon's policy and practice were justified by business necessity, Amazon could satisfy its business needs with less discriminatory alternatives, including the use of a more individualized assessment of driver qualifications and ability to perform the job.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

8. Amazon has a place of business in the District of Massachusetts and otherwise conducts business in this District and is therefore subject to personal jurisdiction in this District.

9. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391, because Amazon is subject to personal jurisdiction in this District and because a substantial part of the acts or omissions giving rise to the claims addressed in this action occurred in this District.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C §§ 2201 and 2202.

**PARTIES**

11. Plaintiff Dexter Andrews is an adult resident of Boston, Massachusetts. He made deliveries for Amazon starting in or about June 2016, continuing until he was summarily terminated in August 2016.

12. Plaintiff Raymond Dunn is an adult resident of Boston, Massachusetts. He made deliveries for Amazon starting in or about April 2016, continuing until he was summarily terminated in August 2016.

13. Plaintiff Nuno Gomes is an adult resident of Brockton, Massachusetts. He made deliveries for Amazon starting in or about April 2016, continuing until he was summarily terminated in September 2016.

14. Plaintiff Titus Royal is an adult resident of Boston, Massachusetts. He made deliveries for Amazon starting in or about November and December 2015, and then again starting in or about June 2016, continuing until he was summarily terminated in September 2016.

15. Plaintiff Matthew Soler is an adult resident of Attleborough, Massachusetts. He made deliveries for Amazon starting in or about October 2016, continuing until he was summarily terminated later that month.

16. Plaintiff Nicholas Young is an adult resident of Boston, Massachusetts. He made deliveries for Amazon starting in or about April 2016, continuing until he was summarily terminated in August 2016.

17. Defendant Amazon.com, Inc. is a foreign corporation based in Seattle. It sells and delivers a wide range of goods and products throughout the United States.

18. At all relevant times, Amazon has been an "employer" within the meaning of Title VII.

**FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS**

19. Amazon is the largest internet retailer in the world, with annual revenues approaching $200 billion. Through its amazon.com website, Amazon sells and delivers a huge variety of goods and products to over 300 million customers worldwide.

20. In order to make its deliveries, Amazon contracts with numerous delivery companies throughout Massachusetts and across the United States. At all times relevant herein, contracting entities worked out of common warehouses that are run by Amazon.

21. Although delivery drivers such as Plaintiffs are paid by the delivery companies, they are required to comply with Amazon's policies, procedures, and directions when making deliveries. They typically drive vehicles that have an Amazon label, wear shirts and other apparel that feature the Amazon name and logo, have an Amazon handheld device, and communicate with Amazon dispatchers.

22. Delivery drivers are required to consent to a background check regarding, among other things, past involvement in the criminal justice system and driving history.

23. It is the policy and practice of Amazon to direct the termination of Amazon delivery drivers who do not meet Amazon's background history requirements, regardless of whether delivery drivers have been already successfully performing their job functions ("termination policy"). On information and belief, these terminations occur at Amazon's instruction based solely on drivers' background history, without regard to drivers' successful record of performance for Amazon; without any individualized assessment of qualifications or ability to perform the job; and without giving delivery drivers any opportunity to explain their background history or describe why their successful record of performance or other factors make them qualified for continued employment.

24. On information and belief, such terminations are part of a nationwide policy or practice of Amazon that has affected more than one hundred delivery drivers in Massachusetts alone.

25. It is well-documented that communities of color, including Black and Latino communities in Massachusetts and across the United States, are subjected to policing and traffic enforcement, and are arrested and convicted, at rates significantly higher than the White population.  *See*, *e.g.*, U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Police Behavior During Traffic And Street Stops, 2011, available at https://www.bjs.gov/content/pub/pdf/pbtss11.pdf; *E. Pierson, C. Simoiu, J. Overgoor, S. Corbett-Davies, V. Ramachandran, C. Phillips, S. Goel. (2017) "A large-scale analysis of racial disparities in police stops across the United States"* available at https://5harad.com/papers/traffic-stops.pdf; Prison Policy Initiative, Massachusetts Profile, available at  https://www.prisonpolicy.org/profiles/MA.html. *See* Human Rights Watch, *Decades of Disparity: Drug Arrests and Race in the United States* 1 (2009) (*available at* http://www.hrw.org/sites/default/files/reports/us0309web_1.pdf).

26. For this reason, Amazon's termination of delivery drivers based solely on background history has a disparate impact on Black and Latino drivers, by importing the racial disparities in the criminal justice system into the employment process.

27. Terminating qualified employees based solely on background history eliminates talented employees from the workforce and results in the systematic termination of qualified Black and Latino delivery drivers.

28.  The U.S. Equal Employment Opportunity Commission ("EEOC") has issued guidance specifically outlining how overly restrictive background checks can disparately impact communities of color. *See Enforcement Guidance on the Consideration of Arrest and Conviction Records In Employment Decisions Under Title VII of the Civil Rights*

*Act of 1964* (Apr. 25, 2012) ("EEOC Guidance").  As the EEOC has noted in describing disparate impact liability under federal anti-discrimination laws, such liability attaches "where the evidence shows that a covered employer's criminal record screening policy or practice disproportionately screens out a [] protected group and the employer does not demonstrate that the policy or practice is job related for the positions in question and consistent with business necessity."  *Id*. at Section V.  Factors relevant to whether a background check policy violates anti-discrimination law include what offenses are considered, the time elapsed since the offense, and the nature of the job in question.  *Id*. at Section V(A).  The EEOC specifically emphasizes the importance of employers providing "an opportunity for an individualized assessment for people excluded by the [background] screen…."  *Id*. at Section V(B)(4).

29. Amazon has been or should reasonably have been aware of this EEOC guidance, yet has chosen to disregard it.

30. Any selection device that has a disparate impact must have a "manifest relationship to the employment in question." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971).  It must "be shown to be necessary to safe and efficient job performance to survive a Title VII challenge." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n. 14 (1977).  A criminal record exclusion is valid only when it "operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position." EEOC Guidance, at 14.

31. Amazon cannot show business necessity with respect to its termination policy.  Upon information and belief, the termination policy created significant barriers

to employment that excluded disproportionate numbers of Black and Latino workers. There are less discriminatory alternatives that would have better achieved any legitimate hiring interests.

### Dexter Andrew's Experience of Racial Discrimination

32. Mr. Andrews is a Black man. He began performing deliveries for Amazon in or about June 2016.

33. Mr. Andrews worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

34. When Mr. Andrews was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

35. At all times, he performed his delivery duties competently and without any disciplinary actions.

36. On or about mid-August 2016, without prior warning, Mr. Andrews was terminated. On information and belief, he was terminated at Amazon's instruction based on his background history, without regard to his successful record of

performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

### Raymond Dunn's Experience of Racial Discrimination

37. Mr. Dunn is a Black man. He began performing deliveries for Amazon in or about April 2016.

38. Mr. Dunn worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

39. When Mr. Dunn was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

40. At all times, he performed his delivery duties competently and without any disciplinary actions.

41. On or about August 5, 2016, without prior warning, Mr. Dunn was terminated. On information and belief, he was terminated at Amazon's instruction

based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

## Nuno Gomes' Experience of Racial Discrimination

42. Mr. Gomes is a Black (Cape Verdean) man. He began performing deliveries for Amazon in or about April 2016.

43. Mr. Gomes worked out of an Amazon warehouse in Dedham, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

44. When Mr. Gomes was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

45. At all times, he performed his delivery duties competently and without any disciplinary actions.

based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

## Nuno Gomes' Experience of Racial Discrimination

42. Mr. Gomes is a Black (Cape Verdean) man. He began performing deliveries for Amazon in or about April 2016.

43. Mr. Gomes worked out of an Amazon warehouse in Dedham, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

44. When Mr. Gomes was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

45. At all times, he performed his delivery duties competently and without any disciplinary actions.

46. On or about September 2016, without prior warning, Mr. Gomes was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

### Titus Royal's Experience of Racial Discrimination

47. Mr. Royal is a Black man. He began performing deliveries for Amazon in or about November and December 2015, and then again starting in or about June 2016.

48. Mr. Royal worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

49. When Mr. Royal was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

50. At all times, he performed his delivery duties competently and without any disciplinary actions.

51. On or about September 7, 2016, without prior warning, Mr. Royal was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

**Matthew Soler's Experience of Racial Discrimination**

52. Mr. Soler is a Latino man. He began performing deliveries for Amazon in or about October 2016.

53. Mr. Soler worked out of an Amazon warehouse in Milford, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt and hat that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

54. When Mr. Soler was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background history"). He consented to the background check, and he was hired after the check was

performed, even though on information and belief the check showed one or more past offenses in his background history.

55.     At all times, he performed his delivery duties competently and without any disciplinary actions.

56.     On or about October 20, 2016, without prior warning, Mr. Soler was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

### Nicholas Young's Experience of Racial Discrimination

57.     Mr. Young is a Black man.  He began performing deliveries for Amazon in or about April 2016.

58.     Mr. Young worked out of an Amazon warehouse in Chelsea, Massachusetts. Although he was paid by another entity, he was required to comply with Amazon's policies, procedures, and directions when making deliveries. He drove a van that had an Amazon label, wore a shirt that said Amazon, had an Amazon handheld device, and communicated with Amazon personnel about deliveries.

59.     When Mr. Young was hired to perform deliveries for Amazon, he was required to consent to a background check regarding, among other things, his past involvement in the criminal justice system and his driving history ("background

history"). He consented to the background check, and he was hired after the check was performed, even though on information and belief the check showed one or more past offenses in his background history.

60. At all times, he performed his delivery duties competently and without any disciplinary actions.

61. On or about August 5, 2016, without prior warning, Mr. Young was terminated. On information and belief, he was terminated at Amazon's instruction based solely on his background history, without regard to his successful record of performance; without any individualized assessment of his qualifications or ability to perform the job; and without giving him any opportunity to explain his background history or describe why his successful record of performance or other factors make him qualified for continued employment.

## CLASS ALLEGATIONS

62. Plaintiffs bring this action individually and on behalf of the following class: all Black and Latino individuals who were hired to perform Amazon deliveries in the United States but who were subsequently terminated (within the relevant limitations period) because of Amazon's policies and practices related to background history.

63. Plaintiffs reserve the right to amend the definition of above-defined classes based on discovery or legal developments.

64. On information and belief, numerous Black and Latino individuals across the United States have been adversely affected by Amazon's background history

employment policy and practice, and joinder of all of those individuals is impracticable. Although Plaintiffs do not know the precise number of job applicants harmed by Amazon's violations of Title VII, the number is far greater than feasibly could be addressed through joinder. The precise number is also uniquely within Amazon's possession and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

65. There are questions or law or fact common to all such individuals, including (a) whether Amazon's policy and practice has a disparate impact on Black and Latino individuals, (b) whether the policy and practice is justified by business necessity, and (c) whether there is a less discriminatory alternative that would have a lesser disparate impact. The claims of the Plaintiffs are typical of the claims of other class members.

66. Plaintiffs are members of the classes they seek to represent. Amazon terminated Plaintiffs' employment pursuant to its termination policy, which has a disparate impact on Black and Latino individuals and is neither job related nor consistent with business necessity.

67. Plaintiffs and their counsel will fairly and adequately protect the interests of the class. Indeed, Plaintiffs' counsel are experienced in employment and class action litigation. The public interest is served by a class proceeding based, among other things, on the importance of eliminating discriminatory policies that disproportionately impact disadvantaged communities.

68. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) and/or (c)(4) because Amazon has acted and/or refused to act on grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to the Plaintiffs and the Class Members as a whole.  The Class Members are entitled to injunctive relief to end Amazon's common, uniform, unfairly discriminatory – and illegal – policies and practices, and nominal damages.

69. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) and/or (c)(4) because common questions of fact and law predominate over any questions affecting only individual Class Members.  Amazon has maintained a common policy of terminating individuals based on their background history, which Plaintiffs contend is discriminatory and unlawful.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Amazon's uniform policies and practices.  Although Amazon has maintained a common policy of terminating employees due to their background history, many Class Members may be unaware that their rights have been violated.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

70. On or about January 31, 2017, Plaintiffs filed class complaints with the Massachusetts Commission Against Discrimination ("MCAD") and the U.S. Equal Employment Opportunity Commission ("EEOC").  Plaintiffs amended their complaints on or about January 13, 2018.

71.     The EEOC issued 90-day right-to-sue letters for the Plaintiffs within 90 days of the filing of this Complaint.

## COUNT I

**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.**

72.     Plaintiffs allege and incorporate by reference the above paragraphs.

73.     Title VII makes it an unlawful practice to, among other things, "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e(a)(2).

74.     The conduct of Amazon as described above constitutes unlawful discrimination against the Plaintiffs and the class in violation of Title VII. This claim is brought pursuant to 42 U.S.C. § 2000e(5)(f).

75.     Amazon's policy and practice of disqualifying job applicants with convictions from employment has a disparate impact on Plaintiffs and the class and is neither job related nor consistent with business necessity. Even if Amazon's policy and practice of terminating employees because of their background history could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

WHEREFORE, Plaintiffs respectfully request this Court to:

A.     Certify the matter as a class action on behalf of the proposed class;

B. Designate Plaintiffs Andrews, Dunn, Gomes, Royal, Soler, and Young as Class Representatives for the class;

C. Designate Plaintiffs' Counsel as Class Counsel for the class;

D. Restore Plaintiffs and the class to their positions as Amazon delivery drivers;

E. Award all available damages to Plaintiffs and the class;

F. Declare that Amazon's background check policy and practice as described above violates Title VII;

G. Enjoin Amazon from implementing its background check policy and practice as described above;

H. Award nominal damages;

I. Award attorneys' fees and costs to Plaintiffs and the class;

J. Award pre- and post-judgment interest to Plaintiffs and the class; and

K. Grant such other relief as is just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury.

        DEXTER ANDREWS, RAYMOND DUNN, NUNO GOMES, TITUS ROYAL, MATTHEW SOLER, and NICHOLAS YOUNG, on behalf of themselves and all others similarly situated

        By their attorneys,

        <u>/s/ Stephen Churchill</u>
        Stephen Churchill, BBO #564158
        FAIR WORK, P.C.
        192 South Street, Suite 450
        Boston, MA 02111
        (617) 607-3260
        steve@fairworklaw.com

        Oren Sellstrom, BBO #569045
        Sophia Hall, BBO #684541
        LAWYERS FOR CIVIL RIGHTS
        61 Batterymarch Street, 5th Floor
        Boston, MA 02110
        (617) 482-1145
        osellstrom@lawyersforcivilrights.org
        shall@lawyersforcivilrights.org

Dated: May 24, 2019